JIM MITCHELL AND JED DAVIS, P.A.

v.

Bruce W. JACKSON and Jeannette L. Jackson.

Supreme Judicial Court of Maine.

Submitted on Briefs May 13, 1993.
Decided July 9, 1993.

Mark E. Susi, Gregory J. Farris, Farris, Susi, Heselton & Ladd, Gardiner, Peter J. DeTroy, Anne M. Carney, Norman, Hanson & Detroy, Portland, for plaintiffs.

Bruce W. Jackson, pro se.

Jeanette L. Jackson, pro se.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and DANA, JJ.

COLLINS, Justice.

Bruce W. and Jeannette L. Jackson appeal from a summary foreclosure judgment entered in the Superior Court (Penobscot County, *Kravchuk, J.*) in favor of Jim Mitchell and Jed Davis, P.A. (the attorneys) and from a summary judgment (*Pierson, J.*) entered in favor of the attorneys on the Jacksons' counterclaim. We affirm the judgments.

In late 1987, the Jacksons met with the attorneys to discuss their contention that several Maine banks were conspiring to cut off their credit. In December 1987, the parties entered into a written contract pursuant to which the attorneys agreed to provide legal services in the "investigation of and lawsuit against banks for conspiracy to cut off clients' credit." The Jacksons' payment of legal fees under the contract was secured by a mortgage on a large tract of undeveloped land owned by the Jacksons in Edinburg. The attorneys informed the Jacksons of the need to secure a banking expert in order to pursue the matter. Jed Davis subsequently sought the assistance of Gary Knight, former State Director of the Independent Bankers Association of America; but after twice reviewing the substance of the Jacksons' banking claim, Knight refused to testify as an expert on their behalf.

In November 1988, Davis informed the Jacksons that he had been unable to find a banker willing to testify in their case and that, without a credible expert, they would almost certainly lose. He suggested that if the Jacksons wished to pursue the matter further, they should look for a banking expert themselves and that the statute of limitations on their claim would expire on March 1, 1989. In January 1989, Bruce Jackson informed the attorneys that he had two potential witnesses but he "would not reveal their identities at that time." In February, Davis informed the Jacksons that he "would be unwilling to sign the complaint in the absence of [a banking] expert and in the face of Mr. Knight's

unfavorable opinion" and that to do so "would have involved a violation of Rule 11." He informed them at that time that if they wished to pursue the matter, they would have to proceed *pro se.* Davis prepared a complaint for the Jacksons to file *pro se* as well as a new contract under which the attorneys would provide "[a]dvice regarding and assistance with the clients' pro se lawsuit against [banks]." The Jacksons refused to sign the *pro se* complaint or the new contract. The statute of limitations subsequently expired on the Jacksons' bank claim.

The attorneys filed a complaint for foreclosure of the mortgage on the Jacksons' Edinburg property alleging that the Jacksons failed to pay attorney fees owing under the December 1987 contract. The Jacksons answered and filed several counterclaims all of which essentially alleged legal malpractice. The Superior Court (*Pierson, J.*) entered a summary judgment in favor of the attorneys on the Jacksons' counterclaims because the Jacksons failed to produce "necessary expert testimony to support their allegations against [the attorneys]." Later, the Superior Court (*Kravchuk, J.*) also entered a summary foreclosure judgment in favor of the attorneys. In response, the Jacksons appealed.

## I.

### Foreclosure Action

■ "In reviewing an entry of a summary judgment, we examine the evidence before the court in the light most favorable to the party against whom the judgment has been granted to determine if the trial court committed an error of law." *Robinson v. Maine Central R.R.*, 623 A.2d 626, 627 (Me.1993) (quoting *H.E.P. Dev. Group, Inc. v. Nelson*, 606 A.2d 774, 775 (Me. 1992)). The Jacksons contend that the trial court erred in granting a summary foreclosure judgment because the attorneys demonstrated their "intention to void the original contract secured by [the] mortgage" when they presented the Jacksons with a new contract for providing assistance to the Jacksons in bringing a *pro se* action.

This contention is meritless. We have stated that "[a]n agreement to rescind a contract is itself a contract and must be evaluated by principles of contract law." *Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 775 (Me.1989). Furthermore, we have required that in order "[t]o establish a legally binding agreement the parties must have mutually assented to be bound by all of its material terms [and this] assent must be reflected and manifested in the contract, either expressly or impliedly." *Roy v. Danis*, 553 A.2d 663, 664 (Me.1989). The new contract presented by the attorneys was never signed and the Jacksons conceded in their brief that, "there was no meeting of the minds to constitute a new contract." Under these circumstances, the attorneys' offer of the new contract had absolutely no impact on the December 1987 contract secured by the mortgage.

## II.

### Malpractice Counterclaim

In their legal malpractice counterclaim, the Jacksons challenged the attorneys' judgment regarding the viability of their claim against several Maine banks for conspiring to deny them credit; the attorneys' diligence in procuring a banking expert to support their position; and the attorneys' refusal to proceed on their claim without a banking expert. The Jacksons included only the affidavit of Bruce Jackson in support of their counterclaim for legal malpractice. The trial court (*Pierson, J.*) granted the attorneys' motion for a summary judgment on the Jacksons' counterclaims holding that "[a]bsent expert testimony supporting [the Jacksons] assertions, [they] raise no genuine issue of material fact and their counterclaim fails as a matter of law." The Jacksons challenge this conclusion.

■ Although we have not addressed the necessity of expert testimony to establish an attorney's standard of care and breach thereof in a legal malpractice case, we have decided, in claims for medical malpractice, that "[i]t is incumbent upon the plaintiff to show *by expert testimony* that

the treatment pursued by the defendant was something other than that which the average and reasonably skillful physician would have employed." *Downer v. Veilleux*, 322 A.2d 82, 87 (Me.1974) (emphasis added). Without supporting expert testimony in medical malpractice cases, "the plaintiff fails to make a case for the jury." Richard H. Field & Peter L. Murray, *Maine Evidence*, § 702.1 at 7–13 (3d ed. 1992). We created an exception to this general rule, however, for circumstances "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge;" in those situations, "a verdict may be supported without expert testimony." *Cyr v. Giesen*, 150 Me. 248, 108 A.2d 316, 318 (1954).

The majority of courts around the country have adopted the same general rule and exception for legal malpractice cases: expert evidence is required in a legal malpractice case to establish the attorney's breach of duty "except in cases where the breach or lack thereof is so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen." Michael A. DiSabatino, *Annotation: Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney*, 14 A.L.R.4th 170, 173 (1982); *see, e.g., Bloom v. Dieckmann*, 11 Ohio App.3d 202, 464 N.E.2d 187, 188 (1983) (affirming summary judgment where client failed to produce any expert testimony on the issue of attorney's alleged negligence). We find this to be a sound principle.

■ The question remaining in this case then is whether the case at bar is one "where the breach or lack thereof is so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen." Since the Jacksons are challenging the attorneys' judgment and diligence, the trial court did not commit reversible error by requiring expert testimony to support their claim of negligence. With no expert testimony to establish the attorneys' standard of care and a breach thereof, the

Jacksons failed to establish a genuine issue of material fact and summary judgment was properly granted.

The entry is:

Judgments affirmed.

All concurring.