1999 ME 8

**Epiphanes K. BALIAN**

v.

**BOARD OF LICENSURE
IN MEDICINE.**

Supreme Judicial Court of Maine.

Argued Sept. 8, 1998.

Decided Jan. 11, 1999.

Chadbourn H. Smith (orally), Fenton, Chapman, Fenton, Smith & Kane, P.A., Bar Harbor, for plaintiff.

Andrew Ketterer, Attorney General, Jeffrey Frankel, Asst. Atty. Gen. (orally), Ruth McNiff, Asst. Atty. Gen., Augusta, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Epiphanes K. Balian appeals from the judgment entered in the Administrative Court (*Beaudoin, C.J.*) affirming the decision and order of the Board of Licensure in Medicine imposing a $1,500 civil penalty against him for "unprofessional conduct" in violation of 32 M.R.S.A. § 3282–A(2)(F) (Supp.1998) [1] for his failure to release medical records to his patient's doctors. On appeal, Balian argues that the Board's failure to establish by record evidence the ethical standards governing the release of medical records violated Balian's due process rights. We agree and vacate the court's decision.

[¶ 2] Dr. Dorothy Howard, a clinical social worker, referred a patient to Balian, who provided two hours of psychiatric services. After the visit, the patient wrote to Balian requesting that he send copies of her records to Howard and Dr. Janet Fowle. The patient signed two releases and included them in the letter.[2] Balian did not respond to this request.

[¶ 3] In a second letter a month later, the patient informed Balian that neither Fowle nor Howard had received the requested medical records. Balian again failed to comply and never explained to the patient why he did not respond to her requests.

[¶ 4] The patient complained to the Board, and the Board charged Balian with unprofessional conduct in violation of 32 M.R.S.A. § 3282–A(2)(F). The Board's notice of adjudicative hearing set forth the following issue:

> Whether you have engaged in unprofessional conduct by violating any standard of professional behavior which has been es-

---

1. Title 32 M.R.S.A. § 3282–A(2)(F) provides in part:

   **Grounds for discipline.** The board may suspend or revoke a license pursuant to Title 5, section 10004. The following are grounds for an action to refuse to issue, modify, restrict, suspend, revoke or refuse to renew the license of an individual licensed under this chapter:

   . . . .

   F. Unprofessional conduct. A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior that has been established in the practice for which the licensee is licensed.

32 M.R.S.A. § 3282–A(2)(F) (Supp.1998).

2. The first release, executed on Dr. Howard's letterhead stationery, was labelled "Record Release Authorization" and stated, "I authorize and request you to release my medical records to [Dr. Howard]." The release included Dr. Howard's mailing address and the patient's signature. The second release, labelled "Records Release Authorization," read, "I authorize and request you to release my medical records to [Dr. Fowle]," and included Dr. Fowle's address and the patient's signature.

tablished for the practice of medicine by your failure, as required by Title 22 M.R.S.A. Section 1711–A,[3] to release the medical records or a narrative report of [the patient] to the parties she requested. Title 32 M.R.S.A. Section 3282–A(2)(F).

[¶ 5] At the hearing, the Board's inquiry focused exclusively on Balian's alleged violation of 22 M.R.S.A. § 1711–B. The Board did not discuss or introduce in evidence any standard of professional conduct that Balian was alleged to have violated.

[¶ 6] Balian testified that he did not release the patient's medical records because he requires that (1) the patient's signature be witnessed and attested to by someone from the requesting physician's office; (2) the witness sign the release form; and (3) the physician make a specific request to Balian. Because of noncompliance with these requirements Balian testified that he never sent the records to Fowle or Howard. The Board found that Balian never told the patient about his requirements for the release of medical records.[4] Pursuant to the Board's written request, Balian provided the patient's records to the Board, but the records are not in evidence.

[¶ 7] The Board first concluded that 22 M.R.S.A. § 1711–B was inapplicable and then found that Balian's refusal to release the records to Fowle and Howard constituted "unprofessional conduct" pursuant to 32 M.R.S.A. § 3282–A(2)(F). In reaching its decision, the Board stated that, "at the very least, the American Medical Association Code of Ethics, basic principles of medical ethics and the common law required [Balian] to either release medical records as directed by [the patient] or inform [the patient] of the standard [he] was requiring before he would release her medical records." The Board issued a reprimand to Balian and imposed a civil penalty of $1,500.

## PROCEDURAL DUE PROCESS

[¶ 8] Balian argues that the Board violated his procedural due process rights by failing to reveal and introduce in evidence the standards of professional ethics he was alleged to have violated. We agree.

[¶ 9] This Court reviews the Board's decision directly for an abuse of discretion, errors of law, or findings unsupported by the evidence. *Winsor v. Maine Real Estate*

3. The Board's charge erroneously cites 22 M.R.S.A. § 1711–A instead of 22 M.R.S.A. § 1711–B (1992).
  Title 22 M.R.S.A. § 1711–B provides in relevant part:
  2. **Access.** Upon written consent of the person to whom copies of records must be released pursuant to this section, a health care practitioner shall release copies of all treatment records of a patient or a narrative containing all relevant information in the treatment records. The health care practitioner may exclude from the copies of treatment records released any personal notes that are not directly related to the patient's past or future treatment. The copies or narrative must be released to the designated person within a reasonable time.
  If the practitioner believes that release of the records is detrimental to the health of the patient, the practitioner shall advise the patient that copies of the treatment records or a narrative containing all relevant information in the treatment records will be made available to the patient's authorized representative upon presentation of a written authorization signed by the patient. The copies or narrative must be released to the authorized representative within a reasonable time.

3. **Person receiving the records.** Except as otherwise provided in this section, the copies or narrative specified in subsection 2 must be released to:
  A. The person who is the subject of the treatment record, if that person is 18 years of age or older and mentally competent;
  B. The parent, guardian ad litem or legal guardian of the person who is the subject of the record if the person is a minor, or the legal guardian if the person who is the subject of the record is mentally incompetent; or
  C. The designee of a durable medical power of attorney, if the person who is the subject of the record is incompetent and executed such an instrument.
22 M.R.S.A. § 1711–B(2)–(3) (1992).

4. Balian argued for the first time on appeal that he advised the patient of his standards for release of the records during his meeting with her. Balian, however, never explained this to the Board at the hearing, and we therefore accept the Board's finding that Balian never communicated the requirement or standard for the release of patient records to the patient.

*Comm'n*, 1997 ME 122, ¶ 4, 695 A.2d 1198, 1200.

■■■ [¶ 10] The Due Process Clauses of the Maine and Federal Constitutions [5] guarantee due process before the state deprives a citizen of a property right. *See Board of Overseers of the Bar v. Lefebvre*, 1998 ME 24, ¶ 15, 707 A.2d 69, 73. "[W]hat process is due will vary from case to case . . . to assure the basic fairness of each particular action according to its circumstances." *Fichter v. Board of Envtl. Protection*, 604 A.2d 433, 437 (Me.1992) (quoting *Secure Env'ts, Inc. v. Town of Norridgewock*, 544 A.2d 319, 324–25 (Me.1988)). The United States Supreme Court has set forth three factors to assess whether the state violated an individual's right to due process:

> First, the private interest that will be affected by the official action: second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Fichter*, 604 A.2d at 437 (Me.1992) (applying *Eldridge* factors to due process challenge to denial of permit by Board of Environmental Protection).

■■ [¶ 11] With respect to the first *Eldridge* factor, Balian's property interest in his professional license and his financial resources are at stake.[6] *See Lefebvre*, 1998 ME 24, ¶ 15, 707 A.2d 69, 73 (due process protections implicated in hearing to suspend

attorney's license); *Board of Registration in Med. v. Fiorica*, 488 A.2d 1371, 1375 (Me. 1985) (due process protections implicated in proceeding to revoke doctor's license).

■■ [¶ 12] With respect to the second *Eldridge* factor, disclosing the standard permits the licensee to assert a defense, enables both expert and lay members of the Board to evaluate the licensee's conduct, and enhances our ability to provide effective judicial review. *See In re Appeal of Schramm*, 414 N.W.2d 31, 35–36 (S.D.1987) (discussing rationale for due process protections in professional discipline proceedings). A licensee should have the opportunity to rebut the evidence establishing a standard and the right to construct a defense based on the standard. *See Lefebvre*, 1998 ME 24, ¶ 16, 707 A.2d at 73 (reasoning that if licensee had fair notice regarding charges against him he could have adduced evidence and constructed arguments to refute theory of misconduct); *In re Appeal of Schramm*, 414 N.W.2d at 35 (discussing due process protections available when evidence introduced to establish a professional's negligence). Here, the Board denied Balian these opportunities by failing to even disclose the appropriate ethical standards.

[¶ 13] Moreover, in a Board comprised of both lay persons and persons of the regulated profession, the absence of a clear standard unduly shifts power and influence to the non-lay members. *See In re Appeal of Schramm*, 414 N.W.2d at 35. Here, the lay member on the Board, without knowing the applicable ethical standard, most likely had to defer to the professional members. This imbalance of power would not exist—and the risk of an erroneous deprivation of a licensee's interests would therefore be reduced—

---

5. Me. Const. art. I, § 6–A; U.S. Const. amend. XIV. "The due process requirements of the Maine and Federal Constitutions are identical." *Board of Overseers of the Bar v. Lefebvre*, 1998 ME 24, ¶ 15 n. 13, 707 A.2d 69, 73 n. 13.

6. The Board's notice to Balian stated that if it found the allegations against him were true then it "may take such action as it is statutorily empowered to take, including, but not limited to reprimands, fines, suspension, probation, nonrenewal or any combination thereof, as deemed appropriate by the Board." We need not decide whether the Board did, in fact, have the power to

suspend Balian's license pursuant to the adjudicatory hearing. *Cf.* 32 M.R.S.A. § 3282–A(1)(D) (Supp.1998) (Board may seek suspension or revocation of license by filing complaint with Administrative Court pursuant to 4 M.R.S.A. § 1151) *with* 32 M.R.S.A. § 3282–A(1)(C) (Supp. 1998) (Board may hold adjudicatory hearing for modification or nonrenewal of license) *and* 10 M.R.S.A. §§ 8001–8003 (1997 & Supp.1998) (setting forth disciplinary powers of state licensing boards but omitting State Board of Licensure in Medicine from list of covered boards).

if all Board members understood the applicable standard and based their decision thereon.[7]

■ [¶ 14] Finally, effective judicial review requires that a Board rely on standards set forth in the record. *See id.* at 36–37 (holding dental board's charge of "unacceptable patient care" arising from dentist's failure to perform ordinary skills had to base findings on expert testimony). This Court's ability to review this case is limited without record evidence regarding the standards applied by the Board. For example, the only evidence presented to this Court with respect to the ethics governing the release of medical records is confined to the Administrative Court's decision that discusses—for the first time in these proceedings—excerpts from the American Medical Association's (AMA) Code of Ethics and two medical ethics treatises.[8]

The record of the hearing does not demonstrate what standard, if any, was applied by the Board.

■ [¶ 15] With respect to the final *Eldridge* factor, requiring that the Board introduce in evidence the applicable standard does not entail an unreasonable administrative burden. 424 U.S. at 335, 96 S.Ct. 893. The Board may introduce evidence of the applicable standard through a variety of methods, including, for example, the simple admission in evidence of the applicable AMA provisions. *See Arthurs v. Board of Registration in Med.*, 383 Mass. 299, 418 N.E.2d 1236, 1244 (Mass.1981) (suggesting that an agency may establish facts by expert witnesses or official notice). For these reasons, procedural due process requires that the Board introduce in evidence the applicable standard of conduct

7. Presently, the Board consists of nine individuals. Three individuals are representatives of the public. The remaining six "must be graduates of a legally chartered medical college or university having authority to confer degrees in medicine and must have been actively engaged in the practice of their profession in this State for a continuous period of 5 years preceding their appointments to the board." 32 M.R.S.A. § 3263 (Supp. 1998).

At Balian's hearing in September 1996, one public member was recused and another public member could not attend. As a result, only one public member participated in the hearing.

8. The American Medical Association (AMA) Code of Ethics provides as follows:

**7.01   Records of Physicians: Availability of Information to Other Physicians.**
The interest of the patient is paramount in the practice of medicine, and everything that can reasonably and lawfully be done to serve that interest must be done by all physicians who have served or are serving the patient. A physician who formerly treated a patient should not refuse for any reason to make records of that patient promptly available on request to another physician presently treating the patient. . . .
**7.02   Records of Physicians: Information and Patients.**
Notes made in treating a patient are primarily for the physician's own use and constitute his or her personal property. However, on request of the patient a physician should provide a copy or a summary of the record to the patient or to another physician, an attorney, or other person designated by the patient.
. . . .

The record is a confidential document involving the physician-patient relationship and should not be communicated to a third party without the patient's prior written consent, unless required by law or to protect the welfare of the individual or the community. . . .
American Medical Association, *Code of Medical Ethics* §§ 7.01—7.02 (1994). At oral argument on appeal to this Court, the Board stated that sections 7.01 and 7.02 were the basis for its decision. The record indicates that the Board never made reference to a specific provision during deliberations or during the hearing.
In fact, the AMA's Code of Ethics may not even supply the appropriate standards to discipline Balian. Balian provided psychiatric counseling, which could have involved sensitive information that he believed warranted precautions in the form of a specific request from a physician and a witness to the patient's signature. This is arguably consistent with a Principle of Medical Ethics to "safeguard patient confidences within the constraints of the law." *Id.* at Preamble, Principle IV. Moreover, one health care treatise notes that "[w]hat constitutes an appropriate request will depend upon the circumstances. In routine cases, a provider may be justified in requiring that the patient give written authorization and that *the physician make a written request* prior to forwarding the information." Scott Becker, Health Care Law: A Practical Guide § 19.04[1] (1998) (emphasis added). Further, Becker notes that "[p]sychiatric records have also been recognized as needing special protection." *Id.* at § 19.05[2]. We present these issues not in an attempt to discern or establish the proper ethical standard in this case, but rather to highlight the need for the Board to supply in the record an objective standard, and then utilize its expertise to apply the facts to the standard.

 [¶ 16] We agree, however, that where an act is blatantly illegal or improper, or where the licensee admits to a violation, the Board need not introduce record evidence to establish the necessary standard. *Cf. Jim Mitchell & Jed Davis, P.A. v. Jackson*, 627 A.2d 1014, 1017 (Me.1993) (expert testimony to establish standard of care for attorney unnecessary where breach of duty is "so obvious that it may be determined by the Court as a matter of law, or is within the ordinary knowledge and experience of laymen."); *Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954) (expert testimony to establish standard of care for physician unnecessary "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge."). In this case, however, neither situation exists, and the Board must set forth the standard in evidence.

The entry is:

Judgment vacated. Remanded to the Administrative Court with instructions to remand to the Board of Licensure in Medicine for further proceedings consistent with this opinion.

WATHEN, C.J., dissenting.

[¶ 17] I must respectfully dissent. Medical information belongs to the patient, not the consulting physician. After receiving two written requests from his patient, Dr. Balian's abject failure to explain his particular requirements for releasing copies of the patient's records was blatantly improper. The patient and the referring health care providers were left without any means for understanding the true reasons for Dr. Balian's failure to supply copies of routine medical records. That Dr. Balian's actions, ignoring his patient's request and subsequent inquiry without explaining his requirements, constituted a breach of his duty to his patient is surely a matter within common knowledge. Therefore the Board was not required to introduce expert testimony of the appropriate standard of care. *See Searles v. Trustees of St. Joseph's College*, 695 A.2d 1206, 1210 (Me.1997) (citing *Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954)). I would affirm the judgment.