DONALD L. GARBRECHT
LAW LIBRARY

AUG 20

STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION NO.
AP-01-35
AMM-PEU- 5/20/2002

STEVEN LANE,        )
        Petitioner    )
                     )
v.                   )        ORDER AND DECISION ON
                     )        PETITIONER'S 80B APPEAL
TOWN OF              )
MILLINOCKET,         )
        Respondent   )

FILED & ENTERED
SUPERIOR COURT

MAY 2 0 2002

PENOBSCOT COUNTY

Before the court is an appeal by the petitioner, Steven Lane ("Lane"), from a decision of the Town of Millinocket Personnel Board (the "Board") finding that Lane should be terminated from his position as Chief Operator of the Wastewater Treatment Plant and his position as a Call-In Emergency Medical Technician/Firefighter for the Town's Fire Department. For the following reasons, both of the Board's decisions are vacated and this matter is remanded for further proceedings in accordance with this decision.

## BACKGROUND

The following facts were before the Board. Lane has suffered from major depression for a number of years, and experienced stress related to his interactions with his supervisor, Jon Campbell, and the Town's former manager Paul Bird. On February 25, 1999, while at work, Lane attempted to hang himself, an act in which Lane's co-workers, Everett Hale ("Hale") and James Charette ("Charette"), intervened and prevented. After this attempted suicide, Lane was hospitalized and began treatment for severe depression with Dr. Anthony Miller ("Dr. Miller"). After his treatment, he was released and returned to work.

Part of Lane's treatment included a prescription medication regimen. Around Spring 2000, Lane stopped taking his medication on a regular basis and began reexperiencing the symptoms of depression. He also continued to experience stress at work. On September 20, 2000, again while at work, Lane attempted suicide with a .22 caliber semiautomatic Ruger pistol. A town resident, Larry Michaud ("Michaud"), with his toddler son in his arms, went to the plant to see Lane and found him with the firearm. Michaud left the area and notified Hale of the circumstances. After a hectic struggle, Hale acquired the gun, which was loaded with a bullet in the chamber.

Lane was again hospitalized and treated for severe depression. After a number of weeks in the hospital, Lane was released and Dr. Miller cleared him to return to work as of December 11, 2000. Dr. Miller testified at the hearing that as long as Lane remained on his medication, it was not likely that he would attempt suicide again and that he did not present a threat to anyone's safety. In a letter to Eugene Conlogue ("Conlogue"), the town manager and Lane's supervisor, dated December 11, 2000, Dr. Miller stated:

> Regarding Mr. Lane's current condition, at this time I know of no problems with his physical or mental health and of no problems with his medications that preclude his return to work safely. I am medically clearing him to return to all of his responsibilities as the Chief Operator of the wastewater treatment facilities. I am also clearing him to return to his responsibilities with the volunteer fire department and as an emergency medical technician between the hours of 5a.m. and 7p.m. I would anticipate clearing him to return to night shift work with the fire and ambulance squads 1-2 months after returning to his other duties, provided that no unexpected complications arise.

In addition, Lane's wife, Theresa, had become more aware of her husband's symptoms and ensured that Lane would remain on his medication. Together with the cooperation of Lane's health care providers and the assistance of his wife, Lane presented a plan to Conlogue for his safe and productive return to work. Specifically, the plan stated:

> The purpose and intent of this plan is to provide a course of action for Steven Lane and the Town of Millinocket regarding Steven's continued treatment and the issues that have surrounded worksite safety. This plan should in no way be construed as a legally binding document. Rather, it is an agreement among Steven, his outpatient providers, and his employer that would benefit all parties involved.
>
> Due to the nature of the circumstances that surrounded Steven's need for treatment, Steven is willing to make the following concessions and requests the following privacy safeguards regarding ongoing treatment:
>
> 1. The sole contact person on behalf of the Town of Millinocket shall be Gene Conlogue, Town Manager.
> 2. Contact shall be verbal in nature where no medical records are shared.
> 3. Provision of limited release for his employer to have access for verbal conference with Dr. Miller for the purpose of monitoring appointment attendance.
> 4. Weekly/biweekly supervision meetings with town manager for purpose of progress update, verification of appointment attendance and medication compliance through an interaction among Steven, Dr. Miller and town manager.

2

5. Provision of education for Steven's employer regarding warning signs of increasing depression.
6. Allowance for town manager to confer with Steven's wife, Theresa, if one or the other believes Steven to be experiencing signs/symptoms of increasing depression.

Several meetings took place between Lane and Conlogue to review his status. At those meetings, the two discussed the possibility of Lane's termination. On March 19, 2001, Conlogue had a "pre-termination" meeting with Lane, Theresa, and Dr. Miller, after which Conlogue decided to terminate Lane. In a letter dated April 4, 2001, and effective April 6, Conlogue notified Lane that he was terminating Lane for bringing a handgun into work and endangering the life of another town employee. The letter specifically stated:

I regret to inform you that I am terminating your employment as Wastewater Treatment Chief Operator and Call-In Firefighter/EMT effective Friday, April 6, 2001. At our pre-termination meeting of March 19, 2001, you offered no further information to support your continued employment. The primary reasons for the dismissal are as follows:

1. On September 20, 2000, you brought a handgun to your office workplace with the intent to commit suicide. Bringing the weapon jeopardized the health, safety, and welfare of two Town residents (one a young child) and a Town employee.
2. As part of the September 20 events, a struggle ensued with the employee as he attempted to get the gun away from you. During this struggle, the gun waived in front of his face several times. Subsequent to this struggle, it was discovered that the gun was loaded and ready to fire. A discharge during the struggle could have injured or killed the other employee and/or yourself.
3. The jeopardy to others caused by this event led to a loss of trust, confidence, and willingness by your fellow workers to work with you again. The safety of your fellow employee was directly imperiled on that day.

Pursuant to the Town's Personnel Policy (the "Policy"), Lane appealed his termination to the Board on May 3, 2001. Under the Policy, the decision of the Town Manager is final except that such decisions can be appealed to the Board, which may "confirm or modify or may set aside the decision if the discipline was too severe and remand to the Town Manager for recommended lesser discipline." MILLINOCKET, ME. PERSONNEL POLICY § A128-15 (D). After two days of hearing and testimony from seven witnesses, the Board issued its first decision, dated August 27, 2001, which stated:

* The board found unanimously that Lane committed a dischargeable offense by

3

bringing a loaded firearm to the workplace and endangered his own life and the lives of others.

* By a two to one vote the board found that the discipline in this instance (termination) was too severe and is set aside.

Board members Mingo and DiCentes believe the discipline of discharge was too severe because of the following mitigating circumstances:

(1) Lane was a long-term employee with an excellent work record and no disciplinary problems prior to the September 20, 2000, incident; and

(2) Lane's assertion that he will continue taking his medications for depression, and that his wife will monitor him on a daily basis is convincing to them. Discipline less than discharge, however, should be imposed.

Chairman Phillips believes the discipline of discharge was appropriate. He concurs with the reasoning of Town Manager Conlogue in deciding to terminate Lane's employment and believes that conjecture about what may or may not happen with Lane in the future is inappropriate.

* The board unanimously decided to remand the matter to the Town Manager for imposition of the following recommended lesser discipline:

(1) That Lane be suspended without pay from September 20, 2000, to September 21, 2001;

(2) That Lane be reinstated at that time as Wastewater Treatment Chief Operator; and

(3) That any employee misconduct on Lane's part within two years shall be grounds for immediate dismissal without recourse to the grievance procedure.

The Town moved for reconsideration of the Board's decision on August 30, 2001, asserting that the Board's decision that the Town Manager's discipline was too severe was inconsistent with the Board's finding that Lane committed a dischargeable offense, that Lane's suspension without pay was "meaningless" because he received eleven months of pay, that the Board exceeded its scope of authority, that the decision disregarded a "zero tolerance policy" for loaded weapons in the work place, and that the decision failed to fully acknolwedge the impact Lane's actions had on Hale and Charette.[1] The Board heard oral argument on the Town's motion to reconsider, but did

---

1. Under the Board's Rules of Procedure,

**Issuance.** The Board shall decide all appeals within **thirty-five (35)** days after the close of the hearing. The Board may reconsider any decision within **thirty (30)** days of its prior

not hear additional evidence and didnot consider additional evidence that the Town attempted to submit. Instead, based upon the same evidence it considered in its original decision, the Board changed its position, and withdrew its original decision that granted Lane reinstatement to his job with the Town. In the second decision, the Board stated:

> \* The Board found unanimously that Lane committed a dischargeable offense by bringing a loaded firearm to the workplace and endangered his own life and the lives of others.
> \* The Board found unanimously that the decision of the Town Manager to terminate the employee should be modified as follows:
>
> 1 -- The employee is terminated;
>
> 2 -- The Town shall pay towards the cost of an individual family health insurance policy for the employee the same amount as the Town pays for its coverage for an employee and family under its group plan from time to time for a period of three years from the date of this decision or until the employee is reemployed by an employer who offers health insurance, whichever occurs first. The employee must purchase an individual health insurance policy with family coverage and the Town shall pay its portion directly to the insurance company providing the coverage.

Lane filed this appeal on October 5, 2001. He asks the court to reinstate the first decision and then modify it to allow him to follow the grievance procedures enumerated in the Policy. For the following reasons, the court vacates both decisions

---

decision. A vote of the Board to reconsider, and the action taken on that reconsideration must occur and be completed within **thirty (30)** days of the date of the vote on the original decision. The decision of the Board shall be communicated, in writing and mailed or hand delivered to the employee, the employee's representative or agent, the Town Manager, and the Town Manager's representative or agent, within seven (7) days after the Board takes final action . . . . All decisions shall be based exclusively on evidence or testimony presented at the hearing. The Board's decision shall be permanently recorded, having written decision filed with evidence introduced at the hearing.

<u>Contents.</u> A written Notice of Decision shall be prepared by the Chairman and signed by the Chairman in his or her representative capacity as Chairman of the Board. The written Notice of Decision shall contain the following: (A) a statement of the issue; (B) reference to the pertinent provisions in the law related to the decision; (C)the relevant facts upon which the decision is based, including the conduct or other facts on the basis of which disciplinary action is being imposed; (D) the Board's findings and conclusions and supporting rationale; and (E) the Board's order, relief or denial of relief.

MILLINOCKET, ME. PERSONNEL APPEALS BOARD RULES OF PROCEDURE, §§ 4.1, 4.2 (emphasis original).

and remands the matter to the Board.

## DISCUSSION

A town board's decision "is reviewed for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record." Bragdon v. Town of Vassalboro, 2001 ME 137, ¶ 4, 780 A.2d 299, 301 (citation and quotation omitted). Lane argues that the Board's reversal of its original decision violated his due process rights.

"Due process is a flexible concept calling for 'such procedural protections as the particular situation demands.'" Seider v. Board of Examiners of Psychologists, 2000 ME 118, ¶ 19, 754 A.2d 986, 991, *quoting* Mathews v. Eldridge, 424 U.S. 319, 334 (1976). In Maine, a property interest in continued employment, for due process purposes, may be established by contract, statute, or proof of an objectively reasonable expectation of continued employment. Krennerich v. Inhabitants of Town of Bristol, 943 F. Supp. 1345, 1352 (D.Me. 1996) (citations omitted); Cook v. Lisbon School Committee, 682 A.2d 672, 676 (Me. 1996). A property interest in public employment can be created by municipal ordinance that restricts the grounds upon which an employee may be discharged. Small v. Inhabitants of City of Belfast, 796 F.2d 544, 549 (1st Cir. 1986). In this case, Lane had a property interest in his employment, as he fell under Millinocket's Personnel Policy, which provided that employees could only be dismissed for cause. As such, he was entitled to due process.

"[T]he concept of due process of law has a dual aspect, substantive and procedural. . . ." 16B AM. JUR. 2D CONSTITUTIONAL LAW § 901. Due process "not only accords procedural safeguards to protected interests, but likewise protects the substantive aspects of liberty against impermissible governmental restrictions." Id. "Procedural due process guarantees that a state proceeding which results in a deprivation of property is fair, while substantive due process insures that such state action is not arbitrary and capricious." Id.

### I. Procedural Due Process

This court finds that Lane was entitled to procedural due process in the termination proceedings, and was afforded that due process by the town. "Due process requires that a tenured public employee be given notice and an opportunity to be heard prior to termination. The pretermination hearing, however, need not be formal or

elaborate, as long as the employee has the opportunity to tell his or her side of the story and explain why termination should not occur. The pretermination hearing is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted." Moen v. Town of Fairfield, 1998 ME 135, ¶ 9, 713 A.2d 321, 324-325 (footnote, citations, and quotation omitted).

In this case, Conlogue had several meetings with Lane prior to the actual March 19, 2001 "pre-termination" hearing, during which Lane and Conlogue discussed Lane's possible termination. He had ample opportunity at those meetings to present his arguments and straighten out any misunderstandings. Subsequently, at the March 19, 2001 "pre-termination" hearing, Conlogue gave Lane another opportunity to present his side of the case. On the appeal to the Board, and later on the Town's Motion to Reconsider, Lane was represented by counsel and had further opportunity to present his case. See Brasslett v. Cota, 761 F.2d 827, 836-837 (1st Cir. 1985) (pretermination hearing given to town fire chief, who was notified of the possibility of discharge and afforded an ample opportunity to defend his actions and rebut any erroneous allegations in one hour conference with town manager, satisfied requirements of procedural due process). Lane was not denied any procedural due process, as he had ample opportunity to be heard by both Conlogue and the Board.

## II. Substantive Due Process

The question remains, then, whether the Board's lack of a "standard" for Motions to Reconsider denied Lane substantive due process. "Due process is that process that protects against the exercise of arbitrary governmental power and guarantees equal and impartial dispensation of law according to the settled course of judicial proceedings or in accordance with fundamental principles in distributive justice." H.E. Sargent, Inc. v. Town of Wells, 676 A.2d 920, 926 (Me. 1996).

The parties do not argue that the Board lacked the authority to promulgate rules governing its procedure. See In re Maine Clean Fuels, Inc., 310 A.2d 736, 744 (Me. 1973) ("It is a generally accepted principle of administrative law that administrative agencies, at least in the absence of specific legislative direction, should be free to fashion their own rules of procedure."). Lane suggests, however, that while the rule provides that the Board may reconsider its decision, its failure to set the standard of when and how

7

decisions will be reconsidered results in arbitrary decision-making. The court agrees.

The rule, section 4.1, states:

> The Board shall decide all appeals within **thirty-five (35)** days after the close of the hearing. The Board may reconsider any decision within **thirty (30)** days of its prior decision. A vote of the Board to reconsider, and the action taken on that reconsideration must occur and be completed within **thirty (30)** days of the date of the vote on the original decision. The decision of the Board shall be communicated, in writing and mailed . . . to the employee, the employee's representative or agent, the Town Manager, and the Town Manager's representative or agent, within seven (7) days after the Board takes final action . . . . All decisions shall be based exclusively on evidence or testimony presented at the hearing. The Board's decision shall be permanently recorded, having a written decision filed with evidence introduced at the hearing.

MILLINOCKET, ME. PERSONNEL APPEALS BOARD RULES OF PROCEDURE, § 4.1 (emphasis original).

To satisfy due process requirements, laws and regulations must provide specific standards which avoid arbitrary and discriminatory enforcement. 16B AM. JUR. 2D CONSTITUTIONAL LAW § 916. Section 4.1 provides no standard as to when the Board will hear a motion to reconsider, and as to how it actually reconsiders the matter. The rule simply provides that the Board may reconsider cases. At the most, section 4.2 (see n.1) provides that a decision on a motion to reconsider must include certain items, such as a statement of the issue, the relevant facts upon which the decision is based, and the Board's findings and conclusions and supporting rationale. There is no standard governing when the Board will or will not grant the motion.[2]

This lack of a standard prejudiced Lane, prevented Lane from having the ability to prepare fully for a reconsideration hearing and tailor his arguments to this standard, and limits the court's ability to decide whether the Board erred in allowing the reconsideration and reversing its position. See Balian v. Bd. of Licensure in Medicine, 1999 ME 8, ¶¶ 12, 13, 722 A.2d 364, 367 (Board's failure to disclose the ethical standard

---

2. For example, motions for reconsideration in the Superior Court fall under M.R. Civ. P. 7 (b)(5), which provides:

> Motions for reconsideration of an order shall not be filed unless required to bring to the court's attention *an error, omission or new material that could not previously have been presented.*

(emphasis added). Further, "[a] motion for reconsideration of the judgment shall be treated as a motion to alter or amend the judgment." M.R. Civ. P. 59 (e).

under which the plaintiff was fined not only prejudiced the plaintiff, in that he was unable to tailor arguments to that standard, but also shifted power and influence to the medical professional members of the board, and limited the court's ability to review the case). If an agency "has acted arbitrarily . . . then that body may have violated the due process clause." Pine Tree Tel. & Tel. Co. v. Public Util. Comm'n, 634 A.2d 1302, 1305 (Me. 1993).

The fact that the Board's decision after reconsideration failed to include its rationale for reversing its position supports the argument that the rule allows for arbitrary decision-making. The Board argues that the decision is adequate and speaks for itself. See Bragdon v. Town of Vassalboro, 2001 ME 137, ¶ 5, 780 A.2d 299, 301 (board may not have issued written findings, but its minutes, also publicly available, reflect the Board's decision, and there was no request for supplemental findings after the Board's written decision was issued; there is no due process violation where an adequate basis for public understanding of the Board action exists and the issue was not called to the Board's attention by a request for supplemental findings). It is true, as the Town asserts, that the findings of fact are adequate to uphold the Board's decision, but the decision lacks any reasons or rationale for the change of position. Compare with Forbes v. Town of Southwest Harbor, 2001 ME 9, ¶ 7, 763 A.2d 1183, 1186 (Board's basis for granting reconsideration, i.e. the realization that it had not adequately sorted through the evidence presented in earlier deliberations, was proper).

While it is also true that "[p]lanning boards and other agencies have the inherent power to reconsider actions previously taken," Cardinali v. Town of Berwick, 550 A.2d 921, 921 (Me. 1988), the board must comply with "statutory and constitutional law." Jackson v. Town of Kennebunk, 530 A.2d 717, 717-718 (Me. 1987); 56 Am. Jur. 2D Municipal Corporations § 315. The Board did not comply with constitutional principles in reconsidering Lane's case. The original decision probably would have withstood scrutiny, but the issuance of a second decision based upon the same evidence with an identical finding of a dischargeable offense but a vastly different result brings the validity of both decisions into question. The court will, therefore, vacate both decisions and remand the matter for hearing, and order that the Board articulate its standard and process prior to the proceeding.

THE DOCKET ENTRY IS:

Both of the Millinocket Personnel Board's decisions are vacated. The matter is remanded to the Millinocket Personnel Board for hearing. The court orders the Board to articulate the standard and process the Board will use prior to the proceeding.

The clerk is ordered to incorporate this decision into the docket by reference.

_____
Justice, Superior Court

DATED: May 17, 2002