STATE OF MAINE
CUMBERLAND, ss.
SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-21-40

SOUTHERN MAINE LANDLORD )
ASSOCIATION, EDWARD L. )
PAYNE, B303, LLC, and SIMON )
NORWALK )
)                                                    **ORDER**
Plaintiffs, )
)
v. )
)
THE CITY OF PORTLAND, MAINE

**Defendant**

and

**PEOPLE FIRST PORTLAND, LLC,**
**and FORESIDE TENANTS UNION,**

**Intervenors**

Before the court is the Plaintiffs' Motion for Summary Judgment. For the following reasons, Plaintiffs' Motion is denied.

**I. Factual Background:**

The following facts are taken from the parties Joint Stipulated Statement of Material Facts and the record in support.

On November 3, 2020, the voters of the City of Portland approved a citizen initiative referendum entitled "An Act to Protect Tenants." The referendum established a comprehensive City Ordinance regulating the circumstances in which a landlord may increase a tenant's rent ("Rent Control Ordinance" or "Ordinance"). The purpose of the Rent Control Ordinance "is to address increasing rental costs within the City of Portland; to promote neighborhood and community stability; to protect the City's tenant population; to limit arbitrary evictions; and to stabilize and make more predictable future rent increases[.]" Code of Ordinances § 6-230. The

Ordinance also created a "Rent Control Board" and conferred upon it the authority to oversee various rent control matters. The Ordinance became effective on December 6, 2020. The Plaintiff landlords and landlord association have brought this lawsuit against the City of Portland seeking to invalidate the Ordinance in its entirety.

## A. Rent Control Provisions

The Rent Control Ordinance applies to certain residential rental units within the City of Portland.[1] The Ordinance states that landlords may only increase the rent of a covered rental unit once per "rental year" and only if certain conditions have been met. Code of Ordinances § 6-234(b) The Ordinance also establishes a maximum rent increase allowed per rental year. *Id.* A "rental year" is a period of twelve consecutive months beginning on January 1, 2021, or the date in which a rental unit enters the housing market, whichever is earlier. Code of Ordinances § 6-232.

The Ordinance regulates rent increases by establishing a "base rent" for each unit. A unit's base rent equals the rent charged for the unit as of June 1, 2020. Code of Ordinances §§6-232, 6-233(a). The Ordinance then sets forth specific regulations regarding when a landlord may increase a unit's rent above the its base rent. Generally, the base rent for each rental unit must have been registered with the City by January 1, 2021. Code of Ordinances § 6-233(a).

An increase to a unit's base rent must be justified by specific criteria identified in the Ordinance, including: an "annual increase percentage" which corresponds to increases to the cost of living; increases in the City's property tax rate; the establishment of a new tenancy; a landlord's accrued "banked rent;" and any additional rent increase approved by the Rent Board. Code of Ordinances §§ 6-234(b)(1)-(5). The "allowable increase percentage" is published yearly and is

---

[1] The applicability to the Ordinance to certain units is not at issue here.

equal to 100% of the change in the Consumer Price Index for the Greater Boston Metro Area. Code of Ordinances § 6-232. Generally, a rent increase may not exceed the amount allowed under the allowable increase percentage unless one of the remaining criteria also applies. However, under no circumstance may a landlord increase rent more than 10% during a rental year. Code of Ordinances § 6-234(c). Any justifiable rent increase which falls above the 10% threshold is considered "banked rent" and can be used to justify a rent increase the following rental year. *Id.*

The Ordinance further describes the circumstances under which a landlord may apply to the Rent Board for approval of a rent increase. The Ordinance states that "the Rent Board may approve additional rent increases properly demonstrated by the Landlord, attributable to: capital improvements costs, including financing costs; uninsured repair costs; increased housing service costs; and any additional increase, within the opinion of the Rent Board required to allow the Landlord to receive a fair rate of return." Code of Ordinances §§ 6-234(5)(a)-(d). The Ordinance does not further define what constitutes a "fair rate of return." The Ordinance also does not specify how quickly the Rent Board must act on a landlord's request to increase rent.

### B. Rent Board

The Rent Board is comprised of seven members. Code of Ordinances § 6-250. The Ordinance requires that the City "take reasonable steps, but is not required, to appoint to the Rent Board ... no more than three landlords and at least three tenants." *Id.* The Rent Board has the authority to: hear, review, and approve or deny landlord applications for rent increases or an increase to a landlord's base rent; to hear, review, and grant or deny appeals from tenants regarding allegations of violations of Maine's implied warranty of habitability; and, among other things, settle disputes between landlords and tenants arising under the Ordinance. Code of Ordinances §§

6-263(a)-(i). The concurring vote of at least four members is required to authorize any action taken by the Rent Board. Code of Ordinances § 6-257.

Every final decision of the Rent Board must include written findings of fact which specify the reasons for its decision. Code of Ordinances § 6-260(b). All minutes, transcripts, exhibits, papers, applications, and requests filed in any proceeding before the Rent Board must be included in the record of the Board's final decision. Code of Ordinances § 260(a). Final decisions of the Rent Board are subject to the same administrate appeal process as all other final municipal decisions under M.R. Civ. P. 80B. Code of Ordinances § 6-262.

## C. Housing Assistance and Notice of Termination

The Ordinance also states that a landlord "shall not refuse to rent or impose terms of tenancy on any tenant who is a recipient of federal, state, or local public assistance[.]" Code of Ordinances § 6-237(b). Accordingly, Landlords may not refuse or deny a unit to any tenant "because of the tenant's source of income or because of the requirements of any program providing the source of income[.]" Code of Ordinances § 6-237(c). The Ordinance also prohibits a landlord from refusing to participate or comply with any federal, state, or local requirements of a tenant-based rental assistance program. Code of Ordinances § 6-237(d). This means that landlords may not: refuse to allow inspections of a dwelling by any entity administering a tenant-based rental program; refuse to make reasonable repairs necessary for a unit to meet the housing quality standards of a tenant-based rental program; refuse to complete the paperwork required under a rental assistance program; or, refuse to provide information required by any entity administering a source of income or tenant-based rental assistance program. Code of Ordinances §§ 6-237(d)(1)-(4).

The Ordinance also regulates the termination of at-will tenancies. Termination of an at-will tenancy requires that the landlord provide the at-will tenant with a minimum of 90-days' written notice. Code of Ordinances § 6-236(a). However, the Ordinance does not apply to the termination of at-will tenancies that are "for cause" under state law.[2] Code of Ordinances § 6-236(a)(1). The Ordinance's notice provision also does not apply to: short-term rentals with a term of fewer than 30 days; holdover tenancies; or where a landlord pays damages to the at-will tenant. Code of Ordinances § 6-236(a)(1)(a)-(d) A landlord who provides less than 59 days' notice must pay the tenant $1,000 and a landlord who provides between 60 and 90 days' notice must pay $500. Code of Ordinances § 6-236(a)(1)(d).

## II. Summary Judgement Standard

A party is entitled to summary judgement when review of the party's statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quotations omitted). The court reviews the evidence in the light most favorable to the non-moving party. *Id.* "When the plaintiff is the moving party on a motion for summary judgment, the plaintiff has the burden to demonstrate that each element of its claim is established without dispute as to material fact within the summary judgment record." *North Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 8, 984 A.2d 1278.

---

[2] For cause includes instances where a tenant has caused substantial damage or a nuisance within the premises; the tenant is 7 days or more behind in the payment of rent; the tenant commits or threatens an act of domestic violence against another tenant; or the person occupying the premises is not an authorized occupant. *See* 14 M.R.S. § 6002(1)(A)-(F).

## III. Discussion:

The Plaintiffs argue that the Ordinance is unlawful on its face and the entire Ordinance must be struck down. In particular, Plaintiffs argue that the Ordinance: violates due process; is preempted by state and federal law; is an unlawful exercise of the municipal citizen referendum; and has unlawful retroactive effect. Each argument is addressed separately.

### A. Due Process

The Plaintiffs present three arguments for why the Ordinance violates due process: unlawful delegation; vagueness; and, inadequate procedural protections. Although interrelated, these arguments present separate issues for this court to consider.

#### a. Unlawful Delegation

The Plaintiffs first argue that the Ordinance violates due process because it grants the Rent Board discretion to approve or deny a landlord's rent increase application without also providing adequate legislative standards to guide the Board's decision. The Plaintiffs further that the Board's authority to determine whether a landlord is receiving a "fair rate of return" is impermissibly vague because the Board can base its fair rate of return determination of whatever subjective criteria the Board deems appropriate. The Plaintiffs conclude that the Board's discretion to approve or deny rent increases can be applied in an arbitrary manner and that landlords are left without sufficient guidance to determine what facts must be proven in order to gain the Board's approval.

"[W]here a zoning ordinance attempts to permit municipal officials to grant or refuse permits without the guidance of any standards, equal protection[3] is denied its citizens." *Waterville Hotel Corp. v. Board of Zoning Appeals*, 241 A.2d 50, 52 (Me. 1968)(emphasis added). The

---

[3] Although the unlawful delegation doctrine was first announced under equal protection to protect against unlawful favoritism among Board applicants, the doctrine also applies as a due process protection for individual applicants. *See generally, Kosalka v. Town of Georgetown*, 2000 ME 89, 977 A.2d 400.

unlawful delegation doctrine ensures that standards "be applied alike to all persons similarly situated" because a zoning ordinance cannot permit "boards to pick and choose the recipients of their favors." *Id.* at 53; *citing Osius v. City of St. Clair Shores*, 344 Mich. 693, 75 N.W.2d 25 (1956). Therefore, if an ordinance delegates discretionary authority to an administrative board, the ordinance must also "contain standards sufficient to guide administrative action." *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 15, 977 A.2d 400.

The Plaintiffs, Defendant, Intervenors, and Amici, all cite multiple cases discussing the unlawful delegation doctrine. Indeed, much time and energy has been spent attempting to distinguish or apply the cited cases to the Ordinance as presented. From this, it is established that no case is dispositive of whether the Ordinance's grant of discretionary authority to the Rent Board is improper. Accordingly, the court must outline the range of unlawful delegation cases presented and determine how the Rent Control Ordinance fits into that spectrum of cases.

The Law Court first applied the unlawful delegation doctrine in *Waterville Hotel Corp. v. Board of Zoning Appeals*. In *Waterville*, the Court struck down an ordinance which made all conditional use applications "subject to approval of the Zoning Board of Appeals." *Waterville*, 241 A.2d at 52. The ordinance did not prescribe standards or criteria to limit the circumstances under which the Board could approve or deny applications. *Id.* The Law Court observed that without any criteria to limit the Board's discretion, the Board could deny a conditional use application based on whatever arbitrary or subjective criteria the Board deemed appropriate and "reduced [applicants] to a state of "total uncertainty." *Id.* at 53. Accordingly, *Waterville* articulates a baseline rule that ordinances which grant discretionary authority to municipal boards are facially unconstitutional as a matter of law if that ordinance lacks *any* quantitative standards to guide the Broad's decision.

The Law Court has expanded its ruling in *Waterville* to also invalidate those ordinances which limit a Board's discretionary authority to a purported legislative standard, but the purported legislative standard is itself vague or subjective. In *Kolsalka v. Town of Georgetown* for example, the Georgetown Zoning Board could deny a conditional use permit if the Board determined that the proposed use failed "to conserve natural beauty." 2000 ME 106, ¶ 5, 752 A.2d 183. The Court noted that natural beauty is an "unmeasurable quality" and all development sought in a conditional use permit would, "to some extent, destroy[] or impair 'natural beauty.'" *Kosalka*, 2000 ME 106, ¶ 15, 752 A.2d 183. The ordinance did not dictate what natural features were included in "natural beauty" nor did the ordinance promulgate standards to determine how much conservation was required. *Id.* In the absence of more objective qualitative standards, the Board was free to grant or deny permits based on whatever subjective criteria it saw fit. *Id.*

However, the Law Court has distinguished between ordinances which "totally lack[] . . . cognizable, quantitative standards" from those which promulgate "less precise and objectifiable" ones. *Compare Kosalka*, 2000 ME 106, ¶ 17, 752 A.2d 183; *with Barnard v. Zoning Bd. of Appeals*, 313 A.2d 741, 748 (Me. 1974); *see also Cope v. Brunswick*, 464 A.2d 233, 226-27 (Me. 1983)(recognizing that broad legislative standards can be sufficient to guide a board's administrative decisions). In *Uliano v. Board of Environmental Protection* for example, the state Board of Environmental Protection had the authority to deny a land use permit on the grounds that the use would "unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses[.]" 2009 ME 89, ¶¶ 14, 25, 977 A.2d 400. The Court in *Uliano* observed that terms such as "activity" and "existing scenic and aesthetic uses" were defined by statute. *Uliano*, 2009 ME 89, ¶ 16, 977 A.2d 400. Moreover, "unreasonable" was a well-defined concept under the common law" and unreasonable interference "will necessarily depend on the specific circumstances of a

given case." *Uliano*, 2009 ME 89, ¶¶ 21, 23, 977 A.2d 400. The Court upheld the Board's discretionary authority under these circumstances and distinguished these standards from the "wholly subjective and . . . . amorphous command [it] considered in *Kosalka*[.]" *Uliano*, 2009 ME 89, ¶ 25, 977 A.2d 400.

Combined, these cases identify two instances where a delegation of discretionary authority to an administrative Board violates due process: (1) when a delegation of discretionary authority lacks any legislative standard to guide an administrative decision in the first instance; and (2) where a board's discretionary authority is subject to legislative standards which are wholly subjective or of an immeasurable quality. *Uliano*, 2009 ME 89, ¶ 25, 977 A.2d 400 (quotations omitted). In both instances, due process is violated when an applicant must guess at what facts must be presented in order to gain a Board's approval and permits the Board to render a decision on whatever subjective criteria it sees fit. However, when a delegation of authority is subject to a purported legislative standard, due process is violated when that purported legislative standard itself is a wholly subjective determination.

The unlawful delegation doctrine is applicable here to the extent that the Plaintiffs are challenging whether "fair rate of return" is itself a sufficiently definite legislative standard. The Ordinance dictates that a landlord may present evidence to the Rent Board that the landlord's costs attributable to improvements, repair, or increased rental services, has had an impact on the landlord's rate of return. Because the ultimate issue to be decided is the fairness of that return rate, the landlord need only present two quantifiable metrics: the landlord's input costs as compared to the rent the landlord can currently charge by operation of the Ordinance. The Rent Board's discretionary authority is limited to the sole determination of whether that input and output matrix produces a fair rate of return. Under these circumstances, it cannot be said that the Rent Board's

discretion is not subject to *any* legislative standards. Therefore, in order to prove that the Ordinance unlawfully delegates authority to the Rent Board, the Plaintiffs must demonstrate that the purported "fair rate of return" standard is itself wholly subjective or of such immeasurable quality that it violates due process.

Because the Plaintiffs are in fact challenging the definiteness of the Ordinance's fair rate of return standard, the Plaintiffs unlawful delegation argument must be combined with Plaintiffs' void for vagueness challenge. "Indeed, vagueness and unlawful delegation are often raised simultaneously and properly treated as a single inquiry" because both "challenges are concerned with the issue of definiteness." *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 15, 977 A.2d 400. Here, the Plaintiffs allege that that the Ordinance lacks adequate legislative standards because the determination of "fair rate of return" is left to the wholly subjective opinion of the rent control board. Therefore, the question presented is whether "fair rate of return" is sufficiently definite on its face to guide the Rent Board's decision and should therefore be considered alongside Plaintiffs' void for vagueness challenge and treated as a single inquiry.

### b. Unlawful Delegation and Vagueness

Combined, the vagueness and unlawful delegation doctrines dictate that individuals subject to municipal regulation "are entitled to know with reasonable clarity what they must do under state or local land use control laws to obtain the . . . approval they seek." *Kolsalka*, 2000 ME 106, ¶ 12, 977 A.2d 400. "The governing rule . . . may be simply stated as that in delegating power to an administrative agency, the legislative body must spell out its policies in sufficient detail to furnish a guide which will enable those to whom the law is to be applied to reasonably determine their rights thereunder, and so that the determination of those rights will not be left to the purely arbitrary discretion of the administrator." *Stucki v. Plavin*, 291 A.2d 508, 510 (Me. 1972).

An ordinance is unconstitutionally vague if "people of common intelligence must guess at its meaning, or if it authorizes or encourages arbitrary and discriminatory enforcement." *Town of Baldwin v. Carter*, 2002 ME 52, ¶ 10, 794 A.2d 62. On a facial void for vagueness challenge, the court "is bound to avoid an unconstitutional interpretation of a statute if a reasonable interpretation of the statue would satisfy constitutional requirements." *Bossie v. State*, 488 A.2d 477, 479 (Me. 1985). Accordingly, a person alleging that an ordinance is void for vagueness must establish that the ordinance is "invalid in [all respects] and therefore incapable of any valid application." *Id.*

Under this framework, an ordinance is not void for vagueness "where the meaning of the words can be fairly ascertained by reference to the common law and to the judicial determinations in respect thereto." *State v. Davenport*, 326 A.2d 1, 6. Indeed, the Law Court has held that an ordinance survives a void for vagueness challenge if that ordinance "can be construed to be constitutional by importing a reasonable person standard into its language." *Town of Baldwin*, 2002 ME 52 ¶ 12, 794 A.2d 62; *see also Tri-State Rubbish, Inc. v. Town of New Gloucester*, 634 A.2d 1284, 1287 (Me. 1993)("Reasonable compliance is not an unconstitutionally vague concept. If it were, most tort law doctrines and a host of other legal standards would be invalid.").

Here, the court finds that the Ordinance can be reasonably interpreted to import a reasonable person standard into the "fair rate of return" language and thus the Ordinance cannot be invalidated on a facial challenge. Indeed, a plain reading of "fair rate of return" would require the Rent Board to determine what rate of return is reasonable under the circumstances. The Ordinance's use of the word "fair" plainly contemplates that the Rent Board must view a landlord's current rate of return objectively and in relation to other similarly situated landlords. This analysis requires the Rent Board to answer the objective question of what return on investment a landlord would reasonably anticipate to receive based upon the objective facts presented. If the maximum

rate of return the landlord is currently able to receive under the Ordinance falls below that reasonable expectation, then the landlord is entitled to a rent increase. Accordingly, a reasonable interpretation of the Ordinance answers the primary question of what a landlord must prove in order to gain the Board's approval for a rent increase.

Under this same interpretation, the Rent Board cannot be deemed to hold unbridled discretion to approve or deny rent increase applications based on whatever criteria it sees fit. As stated above, the Rent Board's fair rate of return decision is subject to quantifiable metrics: the landlord's current cost input as compared to the rate of return he or she is presently allowed by operation of the Ordinance's rent increase provisions. The Board's decision is limited to whether these metrics produce a fair result. Accordingly, the fair rate of return standard limits the Board's discretion to approve or deny rent increases to objective and qualifiable metrics.

The court's determination that fairness imports a sufficiently definite reasonable person standard is consistent with several other Maine court rulings that have discussed administrative price fixing. The Superior Court has previously considered a similar Portland City Ordinance that granted a Portland municipal board authority to approve "just and reasonable" ferry pilotage fees. *See Bay Ferries, Ltd. v. Bd. of Comm'rs for the Port of Portland*, 2018 Me. Super LEXIS 100. In *Bay Ferries*, the court held "that 'just and reasonable' is a term of art, the contours of which have been defined in case law both in the U.S. Supreme Court and in Maine courts." *Id.* at *6. In reaching this decision, the court observed that ratemaking, in the context of what price a public utility may charge, is an analysis which "begins with an examination of gross revenues and ends with an evaluation of a *reasonable rate of return.*" *Id.* at *7 (emphasis added). Indeed, the court cited favorably to multiple cases where courts have determined the scope of an administrative Board's discretionary authority to set fair and reasonable rates for various commodities. *See New*

*England Tel. & Tel. Co. v. Pub. Utils. Comm'n.*, 390 A.2d 8, 14 (Me. 1978)(administrative fixing of "just and reasonable" rates for public utilities); *citing Federal Power Com. v. Hope Natural Gas Co.*, 320 U.S. 591, 603 (1944); *see also Cumberland Farms Northern, Inc. v. Maine Milk Com.*, 377 A.2d 84, 89 (Me. 1977)(administrative determinations of just and reasonable milk prices).

In addition, the term "fair" is itself a familiar phrase throughout various common law doctrines. *See generally, Estate of Martin*, 2008 ME 7, ¶ 10, 938 A.2d 812(common law rule regarding pre-marital agreements required fair disclosure of marital assets); *Me. Farms Venison v. Peerless Ins. Co.*, 2004 ME 8, ¶ 17, 853 A.2d 767(common law imposes a duty of good faith and fair dealing); *Bell v. Wells*, 557 A.2d 168, 188 (Me. 1989)(disputes at common law over water navigation must strike a fair balance between private land ownership and public rights). Indeed, in 1848, the Law Court detailed that a fundamental object of the common law itself is "the promotion of fair dealing among men[.]" *Rangley v. Spring*, 28 Me. 127, 143 (1848). Moreover, "denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. California*, 314 U.S. 219, 236 (1941). This court cannot hold that an Ordinance which relies on the fundamental due process protection of fairness is, in turn, unconstitutionally vague under due process.

In all, the term "fairness" is subject to a reasonableness standard, the contours of which has been well defined at common law. A reasonable interpretation of the Ordinance sufficiently informs landlords that in order to gain the Board's approval for a rent increase, the landlord must properly demonstrate that his or her current rate of return is unreasonably low when compared to those who rent out the same or similar properties. The Rent Board's discretion to approve or deny a landlord's request is therefore limited to a quantifiable cost-input and profit-output matrix. Accordingly, the Plaintiffs are not entitled to summary judgment on this facial constitutional

challenge because Plaintiffs have failed to show that the Ordinance cannot be reasonably interpreted in a manner that comports with the constitution.

The Plaintiffs also argue that the Ordinance is an unconstitutionally vague delegation of authority because it states only that the Rent Board "*may* approve additional rent increases" and allows the Board to determine "in its opinion" what is necessary to receive a fair rate of return. The Plaintiffs further that the Ordinance's use of "may" and "in its opinion" will likely lead Board members to the conclusion that their authority to approve or deny rent increases is expansive and subjective. The Plaintiffs also argue that the Ordinance's use of "may" is impermissible because the Board is not compelled to approve a rent increases under any specific set of circumstances.

Plaintiffs' argument here is also unavailing. As an initial matter, this is an as applied challenge to the face of the Ordinance. The court cannot declare the Ordinance invalid based on how a theoretical Rent Board may interpret the limits of its discretion. Instead, the Plaintiffs must prove that the "may" and "in its opinion" language cannot be reasonably interpreted in a manner that comports with the constitution. For reasons stated above, the Board's authority to determine "fair rate of return" can reasonably be interpreted as imposing sufficiently definite reasonable person standard that is based on quantifiable criteria.

Additionally, "it is an accepted principle of statutory construction that when the word "may" is used in imposing a public duty upon public officials in the doing of something for the sake of the public good, and the public or third persons have an interest in the exercise of the power, then the word 'may' will be read 'shall[.]'" *Schwanda v. Bonney*, 418 A.2d 163, 167 (Me. 1980). Here, the Board's decision to approve or deny rent increases imposes a duty on the Board to act for the public good by balancing landlord profits with broader housing stability. Both tenants and landlords have an interest in the Board's exercise of that duty. Again, the court is bound to

avoid an unconstitutional interpretation of the Ordinance if there is a reasonable interpretation which comports with constitutional requirements. Accordingly, the court adopts the accepted principle of statutory construction that "may" in the Rent Ordinance should be read "shall."

Based on the forgoing, the Plaintiffs have failed in their heavy burden to show that the Rent Control Ordinance is an unconstitutional delegation of authority based upon the face of the Ordinance. A reasonable interpretation of the Board's discretionary authority sufficiently informs landlords what must be proven in order to gain the Board's approval for a rent increase and the Board's decision is limited to objective and quantifiable criteria. Without more, the Plaintiffs cannot maintain that the Rent Board's discretion is incapable of being applied in a manner which comports with due process. Accordingly, the Plaintiffs have failed to show that they are entitled to judgment that the Rent Control Ordinance's grant of discretionary authority is facially unconstitutional and summary judgment would be inappropriate under the circumstances.

### i. Plaintiffs' Remaining Vagueness Arguments

The Plaintiffs also argue that the Ordinance is unconstitutionally vague in other respects. For one, the Plaintiffs argue that the Ordinance is unconstitutionally vague with regard to base rent. Again, the base rent is the rental price charged for a unit on June 1, 2020 and that base rent number must be reported to the City by January 1, 2021. The Plaintiffs argue that the City has improperly interpreted these provisions to mean that the amount of rent charged for a unit must equal that rent charged as of June 1, 2020. The Plaintiffs' attempt to further demonstrate ambiguity by pointing out that other provisions of the Ordinance have yet to be implemented and further a broad state of uncertainty.

Here, the Plaintiffs' Motion alleges that the Rent Control Ordinance is unconstitutional on its face and is therefore incapable of any valid application. However, the City's interpretation of

the Ordinance's base rent regulations, and any other Ordinance provision, is an as applied challenge. There is no argument here that the Ordinance's base rent regulations are incapable of reasonable interpretation or otherwise require persons of common intelligence to guess at their meaning. Without more, the Plaintiffs cannot maintain that the Ordinance's base rent provisions are unconstitutionally vague on their face and summary judgment would be inappropriate on such grounds.

The Plaintiffs also argue that the Ordinance's definition of rent is unconstitutionally vague. The Ordinance defines "rent" as: "the consideration, including any deposit, bonus, benefit, or gratuity demanded or received for, or in consideration with, the use or occupancy of rental units and housing services. Such consideration includes, but is not limited to, monies and fair value of goods and services rendered to or for the benefit of the Landlord under the Rental Agreement, or in exchange for a Rental Unit, or housing services of any kind." Code of Ordinances § 6-232. The Plaintiffs argue that because the term "housing services" is not defined, landlords are forced to guess at was is covered under the definition of rent.

"The absence of a definition of a term in an ordinance does not compel a finding of invalidity; it means only that the term will be given its common, everyday meaning unless the context dictates otherwise." *Freeport v. Brickyard Cove Assocs.*, 594 A.2d 556, 558 (Me. 1991). Here, the plain meaning of "housing services," as the term is used to define rent, can be reasonably interpreted to mean those services that were agreed upon between the landlord and tenant. Indeed, the crux of the Ordinance's definition of "rent" is consideration itself. Therefore, whether a "housing service" is considered "rent" under the Ordinance is necessarily a question of whether that housing service was part of the bargained for exchange in the overall rental agreement. This determination does not depend on any "housing services" definition but instead turns on the facts

and circumstances surrounding the formation of the rental contract. Accordingly, the term "rent" is not unconstitutionally vague on its face because it is subject to a reasonable interpretation and does not force landlords of common intelligence to guess at its meaning.

### c.  Adequate Procedural Safeguards

The Plaintiffs also argue that the Ordinance violates due process on its face because the Ordinance fails to provide adequate procedural protections against the Ordinance's structural bias against landlords. The Plaintiff's procedural protection argument is premised on the Law Court's holding in *Balian v. Board of Licensure in Med*, 1999 ME 8, 722 A.2d 364.

*Balian* was a medical professional who was found by the Board of Licensure of Medicine to have committed certain ethical violations. *Balian* petitioned the court under M.R. Civ. P. 80C to review the procedures the Board used to determine that *Balian* had indeed committed such violations. Importantly, the Board in *Balian* was comprised of both lay persons and medical professionals. However, the Board's medical processionals were the only Board members familiar with the standard of ethics generally applicable to the medical profession. Despite this, the Board declined to introduce the actual standards of ethics that *Balian* was alleged to have violated before it issued its finding that *Balian* had indeed violated those ethical standards.

*Balian* alleged that the Board's determination violated procedural due process. The Law Court's decision in *Balian* is based on the long established rules for deciding as applied procedural due process challenges, stating that: "[t]he United Sates Supreme Court has set forth three factors to assess whether the state violated an individual's right to due process: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and

administrative burdens that the additional or substitute procedural requirement would entail." 1999 ME 8, ¶ 10, 722 A.2d 364; *citing Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Law Court in *Balian* made specific rulings under each of the three *Eldridge* factors. Under the second *Eldridge* factor, the Law Court held that: "in a Board comprised of both lay persons and persons of the regulated profession, the absence of a clear standard unduly shifts power and influence to the non-lay members." *Balian*, 1999 ME 8, ¶ 13, 722 A.2d 364. As applied to the facts of *Balian*, the Law Court held that the second *Eldridge* factor weighed in favor of *Balian* because such structural bias would be reduced "if all Board members understood the applicable standard and based their decision thereupon." *Id.*

Here, the Plaintiffs have brought a facial challenge to the Rent Control Ordinance. The Court in *Balian* addressed an as applied due process challenge and it is not presently clear how or if *Balian*'s reasoning can be properly applied to the facial due process challenge presented. Moreover, the Plaintiffs' argument rests solely on *Balian's* application of the second *Eldridge* factor. There is no suggestion as to how or if the remaining *Eldridge* factors might be implicated by the Rent Control Ordinance. Accordingly, the Plaintiffs have failed to prove that they are entitled to judgment as a matter of law that the Ordinance lacks adequate procedural protections on its face because they have failed to properly articulate what constitutional standard would entitle them to such judgment. Moreover, the Plaintiffs have failed to show that there is no genuine issue of material fact with regard to the remaining *Eldridge* factors that are necessary to its procedural protection argument as presented.

In addition, the current membership and applicable procedures of the Rent Board preclude the Plaintiffs from maintaining that the Ordinance is impermissibly biased on its face. The Rent Board is currently comprised of three landlords, three tenants, and one homeowner. Because the

Board must have the concurring vote of four members before taking official action, neither landlords nor tenants hold a majority voting block on the Rent Board. Moreover, the Rent Board must publish written findings of any decision it makes and, for reasons stated above, the Board's decision on landlord rent increase applications must be grounded in reasonableness and based on objective criteria. Accordingly, the Plaintiffs' cannot show the Ordinance is incapable of being applied in a constitutionally unbiased manner under the facts presented and summary judgment would therefore inappropriate on such grounds.

## B. Preemption

### a. Federal Preemption

The Plaintiffs next argue that the Ordinance is preempted by federal law because it attempts to make federal housing assistance programs mandatory on Portland landlords. The Plaintiffs' argument rests on the assertion that federal housing programs are expressly voluntary.

"Federal law can preempt state law in three ways: first, by express preemption, where Congress expressly states that federal law preempts the state law; second, by field preemption, where Congress explicitly or implicitly leaves 'no room' for state law, or where federal law is 'so dominant' that it 'will be assumed to preclude enforcement' of the state law; and third, by conflict preemption, where the state law 'actually conflicts with federal law.'" *Bourgoin v. Twin Rivers Paper Co. LLC*, 2018 ME 77, ¶ 9, 187 A.3d 10. On a federal preemption challenge, the court's "sole task is to ascertain the intent of Congress." *California Federal Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280 (1987). Importantly, municipal rental control ordinances that mandate landlord participation in federal housing programs have previously been addressed by a number of federals courts, and "to date . . . [have] been rejected by every court which has confronted it." *Austin Apt. Ass'n. v. City of Austin*, 89 F. Supp. 3d 886, 895 (W.D. Tex. 2015); *citing Bourbeau v. Jonathan*

*Woodner Co.*, 549 F. Supp.2d 78, 88-89 (D.C.C. 2008)(finding that prohibiting discrimination against voucher holders will "advance rather than denigrate" Congress's objectives furthered by housing assistance programs); *Montgomery Cnty. v. Glenmonth Hills Assocs. Privacy World*, 402 Md. 250, 936 A.2d 325 (Md. 2007)("[t]here is nothing in any of the relevant Federal statutes even to indicate, much less establish, that voluntary participation by landlords was an important Congressional objective").

Here, the Plaintiffs' argue that the Ordinance is expressly preempted by the Code of Federal Regulations and its rule regarding Section 8 housing. Under the C.F.R., Section 8 housing is available where a landlord "is willing to lease the unit under the program." 24 C.F.R. § 982.302(b). The C.F.R. also states that:

> "Nothing in part 982 is intended to pre-empt operation of State and local laws that prohibit discrimination against a Section 8 voucher holder because of status as a Section 8 voucher-holder. However, such State and local laws shall not change or affect any requirement of this part, or any other HUD requirements for administration or operation of the program."

24 C.F.R. § 982.53.

The Plaintiffs cannot maintain that Congress expressly intended to preempt state and local laws which mandate participation in the Section 8 program. For one, there is no federal statute or regulation that expressly states that Congress intended for Section 8 to only be a voluntary program. Indeed, the only express mention of state or local laws addressed by the C.F.R. is Congress' unambiguous declaration that it is *not* preempting state or local anti-discrimination laws. Moreover, nothing in the Rent Control Ordinance changes any of the requirements for the administration or operation of the Section 8 housing program itself. The Rent Control Ordinance mandates only that landlords not discriminate or refuse to participate in the already established requirements of the program. Accordingly, voluntary participation is not an express requirement

of the Section 8 housing program and mandating landlord participation furthers Congress' intent by "increasing the number of houses and apartments available to voucher holders[.]" *Austin Apt. Ass'n*, 89 F.Supp.3d at 895.[4] The Plaintiffs have failed to show that the Rent Control Ordinance is expressly preempted by federal law and it would be inappropriate to grant summary judgment on such grounds.

The Plaintiffs Motion also cites globally to the remaining federal preemption scenarios of field and conflict preemption. However, the Plaintiffs have not presented any facts or argument in support of either on summary judgment. Accordingly, the Plaintiffs have also failed to show that there are undisputed issues of material fact in regard to field and conflict preemption and summary judgment is therefore inappropriate on such grounds.

### b. State Preemption

The Plaintiffs next argue that the entire Ordinance must be struck down because the Ordinance conflicts with state law.

"A municipality may exercise its authority to adopt an ordinance if that power is not denied either expressly or by clear implication under state law." *Dubois Livestock v. Town of Arundel*, 2014 ME 122, ¶ 12, 103 A.3d 556. "Local ordinances are presumptively valid . . . and an ordinance will be invalidated only 'when the Legislature has expressly prohibited local regulation, or when the Legislature has intended to occupy the field and the municipal legislation would frustrate the purpose of that law[.]" *Id.*; *citing Int'l Paper Co. v. Town of Jay*, 665 A.2d 998, 1001-02 (Me. 1995). "Accordingly, an ordinance will be preempted only when state law is interpreted to create a comprehensive and exclusive regulatory scheme inconsistent with the local action or when the

---

[4] The Plaintiffs' attempt to distinguish *Austin Apt. Ass'n* is also unavailing. The Court in this case expressly rejected the landlords' claim that the Ordinance is preempted by federal law "because the Ordinance makes participation in [the Housing Choice Voucher Program] mandatory under certain circumstances[.]" *Austin Apt. Ass'n*, 89 F.Supp.3d at 894.

municipal ordinance prevents the efficient accomplishment of a defined state purpose." *Dubois Livestock*, 2014 ME 122, ¶ 13, 103 A.3d 556 (citations and quotations omitted).

The Plaintiffs' state preemption argument is based on two individual Ordinance provisions: the requirement that landlords provide at-will tenants with a 90-day notice to vacate; and the Rent Board's authority to review implied warranty of habitability complaints. As a matter of Maine state law, a tenancy-at-will can be terminated by providing only 30-days written notice. *See* 14 M.R.S. § 6002. A landlord may bring a forcible entry and detainer action to regain possession of a leased premises if a tenant-at-will refuses to vacate after receiving that 30-day notice. *See* 14 M.R.S. §§ 6001(1), 6005. Additionally, Maine statue also imposes an implied warranty into every lease that the leased premises is fit for human habitation. *See* 14 M.R.S. § 6021(2). The statute outlines the process for which tenants may file a complaint under the implied warranty of habitability.

Here, the Plaintiffs argue broadly that these Ordinance provisions conflict with state law and thus the entire Rent Control Ordinance must be struck down. However, Portland City Code is subject to a severability clause, where: "[s]hould any provision or section of [the] Code . . . be held unconstitutional or invalid, such holding shall not be construed as affective the validity of any of the remaining provisions or sections. Ch. 1. Sec. 1-14. Although no Maine Court has addressed Portland's severability Ordinance directly, the Law Court's application of Maine's statewide severability statute serves as a guide here. *See* 1 M.R.S. § 71.

Under state law, "[t]he invalidation of one statutory provision will not result in the remainder of the statute being invalidated if the remainder can be given effect without the invalid provision." *Bayside Enterprises, Inc. v. Maine Agricultural Bargaining Bd.*, 513 A.2d 1355, 1360 (Me. 1986). "If the invalid provision is such an integral part of the statute that the Legislature

would only have enacted the statute as a whole, then the entire statute is invalid." *Id.* Accordingly, the court must determine whether portions of the challenged statute can function in the absence of the invalid provisions. *See Lambert v. Wentworth*, 423 A.2d 527, 535-36 (Me. 1980); *see also Opinion of the Justices*, 2004 ME 54, ¶¶ 23-24, 850 A.2d 1145.

Here, the 90-day notice requirement and authority of the Rent Board to review warranty of habitability complaints are not so integral to the Rent Control Ordinance that invalidation of these provisions would frustrate the central purpose of the Ordinance. At hearing, the Plaintiffs acknowledged that the central purpose of the Ordinance is the regulation of rent increases and the establishment of the Rent Board. Indeed, the stated purpose of the Ordinance is to stabilize rental costs and future rent increases, and promote community stability and limit arbitrary evictions. Although the 90-day notice requirement and warranty of habitability oversight by the Rent Board could certainly provide tenant's housing stability and decrease arbitrary evictions, neither provision is essential to achieving that goal. In the absence of these challenged provisions, the Ordinance would still achieve its central purpose of stabilizing the cost of rent by regulating allowable rent increases with oversight of the Rent Board. Accordingly, the Plaintiffs are not entitled to summary judgment that the entire Rent Control Ordinance is preempted by state law because the portions of the Ordinance challenged here are not integral to the central purpose of the Ordinance.

The court notes that this ruling is limited to the summary judgment record presented. Nothing here should be construed as a ruling on whether individual provisions within the Ordinance are preempted by state law. Instead, Plaintiffs Motion for Summary Judgment is denied because the Plaintiffs seek to invalidate the entire Ordinance based upon individual Ordinance provisions that are incidental to the Ordinance's central purpose.

## C. Municipal Authority

The Plaintiffs also argue that the Rent Control Ordinance is invalid because it is an unlawful exercise of municipal citizen initiative authority. A municipality's authority to initiate laws is derived from two independent sources, the Maine Constitution and Maine statute. Under the Maine Constitution, "[t]he inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character[.]" Me. Const., art. VIII., pt. 2, § 1. However, the legislature has also granted municipalities an "independent and plenary grant of power to . . . legislate on matters beyond those exclusively 'local and municipal[.]'" *School Comm. of York v. York*, 626 A.2d 935, 939 (Me. 1993). Under this plenary grant of power, any municipality "may exercise any power or function which the Legislature has power to confer upon it" so long as that power is not otherwise preempted by state law. 30-A M.R.S. § 3001. The Legislature's grant of plenary power is "liberally construed" and "[t]here is a presumption that any ordinance enacted under this section is a valid exercise of a municipality's home rule authority." 30-A M.R.S. §§ 3001(1)-(2).

Here, the Plaintiffs make a conclusory declaration that the power to enact a City Ordinance by direct citizen initiative does not co-exist with a City Council's home rule authority in 30-A M.R.S. § 3001. The Maine Constitution provides that "[t]he city council of any city may establish the direct initiative and people's veto for the electors of such city in regard to its municipal affairs[.]" Me. Const., art. IV, pt. 3, § 21. Although not explicit, the Plaintiffs' argument appears to rest on the idea that because the Constitution's grant of municipal citizen referendum authority references "municipal affairs" only, municipal referendums are limited to those matters that are of purely municipal concern. If correct, the Plaintiffs would be entitled to summary judgment if there

is no genuine issue of material fact that the Rent Control Ordinance regulates a matter of statewide concern.

The Plaintiffs' argument is misplaced in several respects. For one, the Law Court has ruled that in passing 30-A M.R.S. § 3001, "the Legislature intended to convey a plenary grant of the state's police power to municipalities[.]" *School of Comm. of York*, 626 A.2d at 938. The state's own police power, now conferred upon municipalities, "is comprehensive and all embracing in concept and its operational scope must envision a constant expansion and ever ready elasticity to meet the new and increasing demands for its exercise for the benefit of society." *Acre Tire Co. v. Municipal Officers of Waterville*, 302 A.2d 90, 96-7 (Me. 1973). Indeed, the plenary power of the state is subject only to express or implied limitations placed on it by the Maine and United States Constitutions. *See League of Women Voters v. Sec'y of State*, 683 A.2d 769, 771 (1996).

Here, the Legislature's independent grant of plenary authority to municipalities provides sufficient grounds for a municipality to exercise plenary legislative authority through direct citizen initiative. The state's plenary authority is all encompassing and the Legislature granted municipalities with "any power or function" that it had the all-encompassing power to confer. 30-A M.R.S. § 3001. There is nothing in the state or federal constitutions which limits the Legislature's ability to grant municipalities broad authority to legislate through direct citizen initiative. Although the Maine Constitution may have originally limited municipal citizen referendum to purely municipal affairs, the Legislature's independent grant of plenary authority to municipalities is sufficient to establish an independent grant of plenary citizen initiative authority. Indeed, the Plaintiffs make no argument that the Legislature lacked the authority to expand a municipality's power to legislate through municipal referendum.

Moreover, "the right of the people to initiate and seek to enact legislation is an absolute right." *McGee v. Sec'y of State*, 2006 ME 50, ¶ 21, 896 A.2d 933. The court liberally construes grants of initiative and referendum powers to "facilitate rather than to handicap, the people's exercise of their sovereign power to legislate." *Allen v. Quinn*, 459 A.2d 1098, 1102-03 (Me. 1983). Indeed, "[t]he broad purpose of the direct initiative is the encouragement of participatory democracy." *McGee*, 2006 ME 50, ¶ 25, 896 A.2d 933. "When the people enact legislation by popular vote, [the court] construe[s] the citizen initiative provisions of the Maine Constitution liberally in order to facilitate the people's exercise of their sovereign power to legislate." *League of Women Voters*, 683 A.2d at 771.

Invalidating the Rent Control Ordinance here would constrain the express desire of Portland voters and limit the people's fundamental right to exercise self-governance. The court must construe the Constitution's municipal citizen initiative provisions liberally and in a manner that facilitates democratic participation. Because of this, the Constitution's grant of citizen initiative authority in "municipal affairs" cannot be interpreted as the maximum level of citizen initiative authority that may be granted to municipal residents. Deference toward democratic participation requires that the Constitution instead be interpreted as providing the minimum level of authority that may be exercised through municipal referendum. Accordingly, the Constitution's grant of municipal citizen referendum authority does not prohibit the Legislature from granting municipalities further plenary power to legislate through citizen referendum. To hold otherwise would frustrate the central purpose of the citizen initiative process and handicap the fundamental right of Portland residents to exercise self-governance.

In addition, even if the municipal citizen referendum power is limited to those initiatives which are local and municipal in nature, the Plaintiffs have failed to show that there is no genuine

issue of material fact that the regulation of rent solely within the City of Portland is a matter of statewide concern. There is nothing in the record upon which this court could accurately determine what impact Portland's rental prices have on the State as a whole. Moreover, there is no factual basis for this court to conclude that rental prices within the City of Portland is of sufficient statewide concern that the state should be deemed equally concerned with the issue. *See Albert v. Town of Fairfield*, 597 A.2d 1353, 1353 (Me. 1991). Without a record of undisputed facts on such matters, the court is unable to properly determine these necessary issues of fact without resorting to improper speculation. Accordingly, if the municipal citizen initiative process is limited to matters of municipal concern, the Plaintiffs have failed to show that there is no genuine issue of material fact that the Rent Control Ordinance regulates a matter of statewide concern. Summary judgment is properly denied in such instances.

### D. Invalid Retroactive Effect

Finally, the Plaintiffs' argue in their Complaint that the Rent Control Ordinance is invalid because it impermissibly applies retroactively to events that occurred prior to the Ordinance taking effect. However, the Plaintiffs failed to address this argument in their Motion for Summary Judgment and it would therefore be inappropriate for the court to enter judgment on such grounds.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: July 2, 2021

MaryGay Kennedy, Justice
Maine Superior Court